IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE SHIPMAN AGENCY, INC., §
§
        Plaintiff, §
§
v. § CIVIL ACTION NO. H-18-0772
§
THEBLAZE INC. and TYLER CARDON, §
§
        Defendants. §

**MEMORANDUM OPINION AND ORDER**

Plaintiff The Shipman Agency, Inc. ("Plaintiff," "Shipman" or "Licensor") brings six causes of action against defendants TheBlaze, Inc. ("TheBlaze") and Tyler Cardon ("Cardon") (collectively, "Defendants") for: (1) violation of the Lanham Act, 15 U.S.C. § 1114(a)(1), (2) violation of the Lanham Act, 15 U.S.C. § 1125(a), (3) violation of the Texas Business and Commerce Code § 16.102, (4) unfair competition, (5) promissory estoppel, and (6) tortious interference with prospective business relations.[1] Pending before the court is Defendants TheBlaze Inc. and Tyler Cardon's Amended Motion to Stay and Compel Arbitration and Brief in Support ("Defendants' Motion to Compel") (Docket Entry No. 18). For the reasons stated below, the court will grant Defendants' Motion to Compel.

---

    [1]See Plaintiff's First Amended Complaint ("Amended Complaint"), Docket Entry No. 14.

## I. Background[2]

Plaintiff is an advertising agency and a television creation and production company owned and operated by Stephanie Shipman. TheBlaze is a digital network that licenses television and radio content from producers to provide to its subscribers. Cardon is the president of TheBlaze and its parent company, Mercury Radio Arts, Inc.[3] For the last five years Plaintiff and TheBlaze have entered into successive license agreements in which Plaintiff licensed its content to TheBlaze to air on television. On May 22, 2017, the parties executed their most recent licensing agreement ("2017 License Agreement" or "the Agreement") for TheBlaze to air Plaintiff's programs. The 2017 License Agreement governs the relationship between Plaintiff and TheBlaze, provides details about airing Plaintiff's programs and advertising, and contains a mandatory arbitration provision.[4]

Plaintiff alleges that in 2018 Cardon aimed to destroy the relationship between Shipman and TheBlaze, rejected advertisements from Plaintiff's sponsors, and refused to provide Shipman two minutes of commercial airtime. Plaintiff alleges that contrary to its promises TheBlaze never ran banner ads on its website or

---

[2]See id. at 2-12 ¶¶ 4-72.

[3]Declaration of Ivan Ivankovich ("Ivankovich Declaration"), Exhibit A to Defendants' Motion to Compel, Docket Entry No. 18-1, p. 2 ¶ 4.

[4]See 2017 License Agreement, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 18-2.

promoted Plaintiff's shows on television, radio, or social media. Plaintiff and TheBlaze began negotiating a license agreement for 2018, but on February 21, 2018, TheBlaze informed Plaintiff that it would not enter into a 2018 license agreement. On March 5, 2018, Plaintiff sent TheBlaze a notice of termination of the 2017 License Agreement. Plaintiff alleges that "[d]espite the fact that its license has been terminated, the Blaze is continuing to air Shipman's shows and willfully infringe The Registered Trademarks on television and on digital media."[5] Plaintiff also alleges that Cardon has defamed Plaintiff to its sponsors, causing the companies to cancel their sponsorships of Plaintiff's programs.

Plaintiff filed this action on March 12, 2018, and filed its First Amended Complaint on April 13, 2018, seeking damages, permanent injunctive relief, and other appropriate costs and relief as the court deems appropriate.[6] Defendants have moved to stay this action and to require Plaintiff to arbitrate its claims with Defendants pursuant to the Federal Arbitration Act and the Texas General Arbitration Act.[7]

## II. Analysis

Defendants argue that because the 2017 License Agreement contained a valid arbitration provision and that because

---

[5] Amended Complaint, Docket Entry No. 14, p. 10 ¶ 57.

[6] See id. at 17-18 ¶ 114.

[7] See Defendants' Motion to Compel, Docket Entry No. 18, p. 16.

Plaintiff's claims fall within the scope of that provision, the court should stay the action and compel arbitration.⁸ Plaintiff responds that no arbitration agreement exists as to the unexecuted 2018 License Agreement, that the arbitration provision in the 2017 License Agreement is illusory and unconscionable, and that Plaintiff's claims fall outside the scope of the arbitration provision.⁹

A. Applicable Law

Under the Federal Arbitration Act ("FAA") an arbitration agreement in a contract evidencing a transaction involving interstate commerce is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Underlying the FAA is "the fundamental principle that arbitration is a matter of contract." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011) (internal quotation marks omitted); see Washington Mutual Finance Group, LLC v. Bailey, 364 F.3d 260, 264 (5th Cir. 2004) ("The purpose of the FAA is to give arbitration agreements the same force and effect as other contracts -- no more and no less.").

In determining whether to enforce an arbitration agreement "[f]irst, the court asks whether there is a valid agreement to

---

⁸Id.

⁹Plaintiff's Response in Opposition to Defendants' Motion to Stay and Compel Arbitration ("Plaintiff's Response"), Docket Entry No. 25, pp. 11-19.

arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." Edwards v. Doordash, Inc., Civil Action No. 17-20082, 2018 WL 1954090, at *3 (5th Cir. April 25, 2018) (citing Klein v. Nabors Drilling USA L.P., 710 F.3d 234, 236 (5th Cir. 2013)). If the parties have entered into a binding agreement to arbitrate, the court must determine whether any federal statute or policy renders the claims nonarbitrable. JP Morgan Chase & Co. v. Conegie ex rel. Lee, 492 F.3d 596, 598 (5th Cir. 2007). The party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity. Carter v. Countrywide Credit Industries, Inc., 362 F.3d 294, 297 (5th Cir. 2004). A court should resolve all doubts concerning the arbitrability of claims in favor of arbitration. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 105 S. Ct. 3346, 3353-54 (1985).

**B. There is a Valid Agreement to Arbitrate**

The court must first decide whether an agreement to arbitrate was formed. Paragraph 12 of the Agreement states:

> 12. Governing Law/Dispute Resolution: This Agreement shall be construed in accordance with, and shall in all respects be governed by, the laws of the State of Texas. Any and all disputes, claims and controversies arising out of or relating to any provision of this Agreement, or breach or alleged breach thereof, shall be settled by confidential arbitration in Dallas, Texas, before a single arbitrator, with experience in the entertainment industry, in accordance with the commercial arbitration rules of the American Arbitration Association, and any award rendered in such proceeding shall be final and binding upon the parties hereto. Judgment on the award may be entered in any court having jurisdiction thereof.

>    In the event of any dispute relating to the subject
>    matter hereof, Licensor's sole remedy shall be to
>    pursue an action at law for money damages, and
>    Licensor agrees the Licensor shall not seek to or
>    be entitled to enjoin the distribution, advertising
>    or exploitation of the Programs or the exercise of
>    any of the rights granted herein or terminate or
>    rescind this Agreement. . . . No failure on the
>    part of Licensor or TBI to exercise, and no delay
>    in exercising, any right hereunder shall operate as
>    a waiver thereof; nor shall any single or partial
>    exercise of any right hereunder preclude any other
>    or further exercise thereof or the exercise of any
>    other right. The remedies herein provided are
>    cumulative and not exclusive or in limitation of
>    any other right or remedy provided at law or in
>    equity as otherwise provided herein.[10] (hereinafter
>    the "Arbitration Provision")

1.  **The Arbitration Provision is Not Illusory**

Plaintiff argues that the Arbitration Provision is illusory because it "restricts the power of Shipman to terminate the contract but unilaterally retains that power for Blaze."[11] Plaintiff also argues that the Arbitration Provision is illusory because it does not include a savings clause similar to the one at issue in In re Halliburton Co., 80 S.W.3d 566 (Tex. 2002).[12] Defendant responds that the Arbitration Provision is not illusory because Paragraph 15 of the 2017 License Agreement states that the arbitration provision survives the termination of the contract.[13]

---

[10]2017 License Agreement, Exhibit A-1 to Defendant's Motion to Compel, Docket Entry No. 18-2, pp. 6-7 ¶ 12.

[11]Plaintiff's Response, Docket Entry No. 25, p. 14.

[12]Id. at 15.

[13]Defendants' Reply to Plaintiff's Response in Opposition to Defendants' Amended Motion to Stay and Compel Arbitration ("Defendants' Reply"), Docket Entry No. 26, pp. 6-7.

-6-

Since arbitration agreements are matters of contract, the validity and scope of such agreements are governed by state contract law. Morrison v. Amway Corp., 517 F.3d 248, 254 (5th Cir. 2008). An arbitration agreement is illusory under Texas law "where one party has the unrestrained unilateral authority to terminate its obligation to arbitrate." Nelson v. Watch House International, L.L.C., 815 F.3d 190, 193 (5th Cir. 2016) (quotations and citations omitted). In Halliburton the Texas Supreme Court held that because of two "savings clauses," the employer could not "avoid its promise to arbitrate by amending the provision or terminating it altogether."[14] Halliburton, 80 S.W.3d at 570.

Because Paragraph 15 of the 2017 License Agreement states that the Arbitration Provision "will survive any expiration or termination of this Agreement,"[15] no party has unilateral authority

---

[14] In Halliburton an employee argued that a mandatory arbitration clause was illusory because Halliburton, the employer, had retained the right to modify or terminate the arbitration agreement. Id. at 569. Rejecting this argument, the Texas Supreme Court relied on two key provisions: One stated that "no amendment shall apply to a Dispute of which the Sponsor [Halliburton] had actual notice on the date of amendment"; the other stated that any termination of the arbitration program "shall not be effective until 10 days after reasonable notice of termination is given to Employees or as to Disputes which arose prior to the date of termination." Id. at 569-70 (internal quotation marks omitted). Because of this language, the court held that Halliburton could not "avoid its promise to arbitrate" by amending or terminating the agreement. Id. at 570. The agreement was therefore not illusory. Id.

[15] 2017 License Agreement, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 18-2, p. 7 ¶ 15.

to "avoid its promise to arbitrate by amending the provision or terminating it altogether." Carey v. 24 Hour Fitness, USA, Inc., 669 F.3d 202, 205 (5th Cir. 2012) (quoting In re 24R, Inc., 324 S.W.3d 564, 567 (Tex. 2010)). Because Defendants do not have the power to avoid arbitration under the 2017 License Agreement by unilaterally changing its terms, the arbitration provision is not illusory and the inclusion of a Halliburton-type savings clause is not necessary.

2. The Arbitration Provision is Unconscionable

Plaintiff also argues that the Arbitration Provision is unconscionable because it "impermissibly limits Shipman's right to injunctive relief granted by the Lanham Act, 15 U.S.C. § 1051 et seq. . . ."[16] Defendant responds that the Arbitration Provision is not substantively unconscionable because its terms are "not a complete restriction on Shipman's right to injunctive relief under any circumstances," its remedies are cumulative to other remedies provided at law, and "Shipman points the Court to *no authority* under the Lanham Act to suggest that its right to seek injunctive relief is non-waivable and renders the arbitration agreement unconscionable as a matter of law."[17] Defendant argues that "[e]ven if this Court finds that this restriction on injunctive relief [is]

---

[16]Plaintiff's Response, Docket Entry No. 25, pp. 15-16.

[17]Defendants' Reply, Docket Entry No. 26, pp. 8-9.

unconscionable under the Lanham Act, the appropriate remedy is severance."[18]

Unconscionability includes procedural and substantive unconscionability.[19] Halliburton, 80 S.W.3d at 571. "[S]ubstantive unconscionability . . . refers to the fairness of the arbitration provision itself." Id. "A contract is unenforceable if, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." In re Poly-America, L.P., 262 S.W.3d 337, 348 (Tex. 2008) (quotations and citations omitted). Arbitration provisions relating to federal statutory claims are "valid so long as the arbitration agreement does not waive the substantive rights and remedies the statute affords and the arbitration procedures are fair, such that the employee may 'effectively vindicate his statutory rights.'" Poly-America, 262 S.W.3d at 349 (quoting Halliburton, 80 S.W.3d at 572); see also Mitsubishi Motors Corp., 105 S. Ct. at 3354 ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."); Venture Cotton Cooperative v. Freeman, 435 S.W.3d 222, 229 (Tex. 2014) (citing

---

[18]Id. at 9.

[19]Plaintiff does not argue that the arbitration provision is procedurally unconscionable.

Poly-America, 262 S.W.3d at 349) ("[I]t would be unconscionable for an arbitration agreement to mandate arbitration of a statutory claim and at the same time eliminate the rights and remedies afforded by the statute."). To determine whether the restriction of statutory rights is permissible the court must analyze the underlying purpose of the statute. See Poly-America, 262 S.W.3d at 349-51.

Under the Lanham Act courts may "issue injunctions 'to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark office.'" Mary Kay Inc. v. Anderson, Civil Action No. 3:17-1889-B, 2018 WL 2230623 at *2 (N.D. Tex. May 16, 2018) (quoting 15 U.S.C. § 1116). Permitting a party to contractually avoid this statutory remedy would undermine the Lanham Act's purpose of preventing deception, securing the registered mark's owner's goodwill, and protecting consumers' ability to distinguish among competing products. See 15 U.S.C. § 1127; Two Pesos, Inc. v. Taco Cabana, Inc., 112 S. Ct. 2753, 2760 (1992). Because the Arbitration Provision prohibits Plaintiff from seeking a statutory remedy, it is unconscionable and thus invalid.

However, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." Venture Cotton, 435 S.W.3d at 230 (quoting Poly-America, 262 S.W.3d at 360). "In determining an agreement's essential purpose, the issue is 'whether or not parties would have entered into the agreement absent the

unenforceable provisions.'" Id. The essential purpose of the Arbitration Provision is to submit any dispute to an arbitral forum rather than to a court. See Poly-America, 262 S.W.3d at 360. Eliminating the unconscionable restriction on remedies will not defeat this purpose. See id. "In fact, the lifting of that illegal restriction enhances the ability of the arbitration provision to function fully and adequately under the law." Hadnot v. Bay, Ltd., 344 F.3d 474, 478 (5th Cir. 2003). Plaintiff has presented no evidence that it or Defendants would not have entered into the Agreement absent the unenforceable portion. Moreover, the "Survival" language in Paragraph 15 demonstrates the parties' intent to arbitrate their disputes. Although Plaintiff argues that the court may not sever the unconscionable portion of the Arbitration Provision unless the Agreement contains a severability clause, the Texas Supreme Court and the Fifth Circuit have allowed severance of an unconscionable term without requiring a severability clause. See Venture Cotton, 435 S.W.3d at 230-31; Hadnot, 344 F.3d at 478. The court concludes that the Arbitration Provision's restriction on injunctive relief may be severed while preserving the parties' choice of arbitration as the forum for resolving disputes. See, e.g., Bonded Builders Home Warranty Ass'n of Texas v. Rockoff, 509 S.W.3d 523, 537 (Tex. App. 2016) ("[T]he arbitrator would be bound, as we would be, to follow Venture Cotton Cooperative, strike the limitation on attorney's fees, and sever it from the arbitration agreement."). Therefore, the court will sever

the limitation of remedies from the Arbitration Provision. The arbitrator is authorized to award injunctive relief as well as monetary damages for Plaintiff's claims under the Lanham Act.

Because the Arbitration Provision is not illusory and because the court will sever the unconscionable remedies limitation from the Arbitration Provision, the court concludes that the parties have entered into a binding agreement to arbitrate their dispute and that no federal statute or policy renders the claim nonarbitrable.

## C. The Dispute Falls Within the Scope of the Arbitration Agreement

The court must next decide whether Plaintiff's claims fall within the scope of the 2017 License Agreement's Arbitration Provision. Defendants argue that the broad Arbitration Provision reaches all aspects of the relationship and covers every claim Plaintiff has alleged.[20] Plaintiff responds that its claims of tortious interference with prospective business relationships and promissory estoppel can be maintained without reference to the 2017 License Agreement, and that its claims of trademark infringement and unfair competition relate to conduct separate from Defendants' obligations under the 2017 License Agreement.[21]

"[C]ourts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from

---

[20]Defendants' Motion to Compel, Docket Entry No. 18, p. 12.

[21]Plaintiff's Response, Docket Entry No. 25, p. 18.

broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." Pennzoil Exploration and Production Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998). Broad arbitration clauses "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." Id. "[I]t is only necessary that the dispute 'touch' matters covered by the [contract] to be arbitrable." Id. at 1068. Moreover, the court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." Sedco, Inc. v. Petroleos Mexicanos Mexican National Oil Co. (Pemex), 767 F.2d 1140, 1145 (5th Cir. 1985) (quotations omitted).

The Arbitration Provision in the 2017 License Agreement applies to "[a]ny and all disputes, claims and controversies arising out of or relating to any provision of this Agreement, or breach or alleged breach thereof[.]"[22] Because the clause governs all disputes "relating to" the Agreement it must be construed broadly to include disputes that "touch" matters covered by the Agreement. Plaintiff's promissory estoppel claim is "[b]ased on the course of performance for the previous five years," which includes the 2017 License Agreement.[23] Because the claim relates

---

[22]2017 License Agreement, Exhibit A-1 to Defendants' Motion to Compel, Docket Entry No. 18-2, p. 6 ¶ 12.

[23]Amended Complaint, Docket Entry No. 14, p. 15 ¶ 97.

-13-

to the Agreement, it is within the scope of the Arbitration Provision. In support of its tortious interference claim Plaintiff alleges that "[a] reasonable probability existed that Shipman and Blaze would enter into a License Agreement for the 2018 year but for the actions of Cardon . . . [who] spread[] falsehoods about Shipman and the shows' performance."[24] Plaintiff's expectation that it would execute a 2018 agreement arises from the parties' past course of conduct, including the execution of the 2017 License Agreement. Moreover, the "falsehoods about Shipman" that Cardon allegedly spread pertained to "demand numbers for the licensed shows."[25] Because of the strong federal policy favoring arbitration and because Plaintiff's tortious interference claim relates to the 2017 Agreement, this claim is within the scope of the arbitration clause. See DeStephano v. Broadwing Communications, Inc., 48 F. App'x 103, *6 (5th Cir. 2002). Plaintiff's federal and state trademark infringement claims (Counts I-III) and unfair competition claim (Count IV) also relate to the 2017 License Agreement. Plaintiff alleges that "Defendants continued use of The Registered Marks after withdrawal and termination of the license is likely to cause confusion . . . ."[26] and that "Defendants' actions have been

---

[24] Id. at 16 ¶¶ 101-102.

[25] Id. at 9 ¶¶ 54-55.

[26] Id. at 13 ¶ 82.

undertaken willfully and intentionally, with the full knowledge that Blaze no longer has a license to air the shows, . . ."[27] These claims are based on Defendants' airing Plaintiff's patented television shows without permission after Plaintiff terminated the 2017 License Agreement. All of the parties' disputes therefore fall within the broad scope of the arbitration clause.

D.  **The Court will Dismiss Instead of Stay the Action**

Under Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, "a stay is mandatory upon a showing that the opposing party has commenced suit upon any issue referable to arbitration under an agreement in writing for such arbitration . . ." Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992) (internal quotations omitted). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances. The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." Id. Because the court has concluded that all Plaintiff's claims must be submitted to arbitration, "retaining jurisdiction and staying the action will serve no purpose." Id. The court will therefore dismiss rather than stay this action and will compel arbitration.

---

[27]Id. at 14 ¶ 89.

### III. Conclusion and Order

For the reasons set forth above, Defendants TheBlaze Inc. and Tyler Cardon's Amended Motion to Stay and Compel Arbitration (Docket Entry No. 18) is **GRANTED**. But instead of staying this action, the court will dismiss the action without prejudice. The court **ORDERS** that the provision in Paragraph 12 of the 2017 License Agreement that limits Plaintiff's remedies to money damages is **SEVERED** from the Agreement.

**SIGNED** at Houston, Texas, on this the 22nd day of June, 2018.

SIM LAKE
UNITED STATES DISTRICT JUDGE